Case No. SA CV 18-01544-DOC (DFMx)                     Date: November 19, 2018

Title: SILVIA RAMOS v. WALMART, INC., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Lewman | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [12]

Before the Court is Plaintiff Silvia Ramos ("Ramos" or "Plaintiff") Motion to Remand ("Motion") (Dkt. 12). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the moving papers and considered the parties' arguments, the Court GRANTS Plaintiff's Motion to Remand.

I.   **Background**

A.   **Facts**

The Court adopts the facts as set out in Plaintiff's Complaint ("Compl.") (Dkt. 1-2). In October 2012, Plaintiff began working as a produce associate for for Defendants Wal-Mart, Inc. and Wal-Mart Associates, Inc. (collectively, "Defendant Employers"). Compl. ¶ 8. On July 27, 2017, Plaintiff was involved in a car accident and sustained injuries to her left arm, chest, and other areas of her body. *Id*. ¶ 10. Immediately thereafter Plaintiff reported these injuries to Defendant including but not limited to her immediate manager, George Orozco; her assistant store manager, Mohammed Almustafa,

and her department manager, Cassandra (last name unknown). *Id*. The next day, Plaintiff was seen by her doctor who provided her with a note placing her off work until August 1, 2017. *Id.* ¶ 11. Upon her return, Plaintiff's work activity was restricted as follows: no lifting more than five pounds and no lifting overhead for one week. *Id.* Plaintiff immediately provided a copy of her doctor's note to her three managers. *Id.*

On July 31, 2017, Plaintiff received a call from Defendant Maryann Smith ("Defendant Smith," and together with Defendant Employers, "Defendants"), a fourth manager in Defendant Employers' Human Resources Department, inquiring why Plaintiff was not at work. *Id.* ¶ 12. Plaintiff explained she was recently in a car accident and had been excused from work by her doctor. *Id.* Plaintiff further explained that she provided a copy of her doctor's note to her three immediate supervisors and offered to provide a copy to Defendant Smith as well. *Id.*

Defendant Smith responded by rejecting Plaintiff's offer to provide a copy and advising Plaintiff that her absences were not approved. *Id.* ¶ 13. On the spot, Defendant Smith gave Plaintiff the option of resigning or being fired, which Plaintiff alleges constructively terminated her employment. *Id*. According to Plaintiff, Defendant Employers constructively terminated Plaintiff's employment because Plaintiff was physically disabled or perceived to be disabled, and requested reasonable accommodation for her physical disability. *Id*. ¶ 14.

At all times, each defendant was the agent of each of the other defendants and was acting within the course and scope of employment. *Id*. ¶ 5.

On May 31, 2018, Plaintiff filed a complaint with the Department of Fair Employment and Housing ("DFEH") and received a Notice of Case Closure and Right-to-Sue letter the same day. *Id.* ¶ 5.[1] One June 1, 2018, Plaintiff provided notice of the DFEH complaint and Right-to-Sue letter to Defendants. *Id.*

### B.     Procedural History

On June 4, 2018, Plaintiff filed the Complaint in the Superior Court of California, County of Orange. *See* Compl. Plaintiff brings nine state-law claims: (1) disability discrimination against Defendant Employers and Does; (2) failure to accommodate against Defendant Employers and Does; (3) failure to engage in interactive process against Defendant Employers and Does; (4) retaliation against Defendant Employers and

---

[1] The Court notes that the Complaint repeats paragraph numbers. This citation refers to Paragraph 5 on Page 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 18-01544-DOC (DFMx)                        Date: November 19, 2018
                                                                                                                                                        Page 3

Does; (5) failure to prevent harassment, discrimination, and retaliation against Defendant Employers and Does; (6) violations of California Family Rights Act against Defendant Employers and Does; (7) retaliation for requesting/taking California Family Rights Act leave against Defendant Employers and Does; (8) wrongful termination against Defendant Employers and Does; and (9) intentional infliction of emotional distress ("IIED") against all Defendants. *Id.* ¶¶ 15–119.

On August 28, 2018, Wal-Mart filed its Answer to the Complaint with the Superior Court. Not. of Removal (Dkt. 1) ¶ 8. On August 29, 2018, Defendants removed the case to this Court based on diversity jurisdiction. *See* Not. of Removal (Dkt. 1). On September 26, 2018, Plaintiff filed the instant Motion. On October 5, 2018, Defendants opposed ("Opp'n") (Dkt. 13) and on October 12, 2018, Plaintiff replied ("Reply") (Dkt. 14).

## II.     Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. A federal court may order remand for lack of subject matter jurisdiction or any defect in the removal procedure. 28 U.S.C. § 1447(c).

A federal court has diversity jurisdiction if: (1) the controversy is between "citizens of different States," and (2) the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity, meaning that no plaintiff can be from the same state as a defendant. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 679 (9th Cir. 2006). Thus, a case ordinarily cannot be removed to the federal court if a plaintiff and a defendant are citizens of the same state. *See* 28 U.S.C. § 1332(a). However, removal is proper despite the presence of a non-diverse defendant where that defendant is fraudulently joined as a sham defendant. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). The failure to state a claim

against the non-diverse defendant must be "obvious according to the well-settled rules of the state." *United Comp. Sys. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002).

The "general presumption" is that the inclusion of a defendant residing in the same state as the plaintiff is not for the sole purpose of defeating diversity jurisdiction. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). This presumption requires defendants to "do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant." *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (internal citations omitted). Defendant must also show that, even if a plaintiff's claims do not meet the necessary pleading requirements at the time of removal, he "could not re-allege at least one of them to do so." *Suelen v. Wells Fargo Bank, N.A.*, No. C-13-002 MEJ, 2013 WL 1320697, at *4 (N.D. Cal. Apr. 1, 2013). "[R]emand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure [the] purported deficiency." *Id.* In other words, "[i]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants [,] the court must remand." *Macey v. Allstate Property and Cas. Ins. Co.,* 220 F.Supp. 2d 1116,1117 (N.D. Cal. 2002). Lastly, a fraudulent joinder "must be proven by clear and convincing evidence." *Hamilton Materials, Inc.*, 494 F.3d at 1206.

### III. Discussion

The threshold issue in this case is whether the Court has subject matter jurisdiction. Defendants removed the action to this Court on the grounds that non-diverse Defendant Smith was fraudulently joined. *See* Not. of Rem. at 6. The parties do not dispute that both Plaintiff Ramos and Defendant Smith are citizens of California, which facially defeats diversity jurisdiction. *See* Mot. at 1. However, according to Defendants, Plaintiff cannot state a claim for IIED against Defendant Smith because (1) the claim is subject to the manager's privilege under the Worker's Compensation Action ("WCA"); and (2) Plaintiff pleads no outrageous conduct or intentional harm to establish a claim of IIED. Not. of Rem. at 6–10. The Court addresses each argument in turn to determine whether Plaintiff can plausibly recover against non-diverse Defendant Smith on her IIED claim. *See AT&T Corp.*, 298 F. 3d at 761 ("If a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the well-settled rules of the state, the joinder is fraudulent[.]").

### A.     Whether The WCA Pre-empts Plaintiff's Claims

Defendants argue that remand is improper because Plaintiff's claim for IIED against Defendant Smith is pre-empted by the WCA. Opp'n at 2. According to Defendants, Plaintiff has pleaded nothing more than personnel actions which cannot support individual supervisor liability. *Id*. at 3. Defendants argue that the alleged conduct undertaken by Defendant Smith is conduct that is a normal part of the employment relationship. *Id*. at 3–4. Plaintiff argues that because the allegations relate to retaliatory and discriminatory behavior, the IIED claim is viable and not pre-empted by the WCA. Reply at 3–4.

Under California law, workers' compensation provides the exclusive remedy for an IIED claim that is based solely on alleged personnel activity. *See* Cal. Lab. Code § 3600, *et seq.* For the WCA to bar an IIED claim: (1) the employer's conduct must not contravene fundamental public policy; and (2) the employer's conduct must be within the normal risks of the employment relationship. *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 754–55 (1992) (if "the employer's conduct neither contravenes fundamental public policy nor exceeds the inherent risks of the employment," it is not actionable in a civil suit)). Discriminatory conduct exceeds the bounds of a normal employment relationship. *Accardi v. Superior Court*, 17 Cal. App. 4th 341, 352 (1993), *as modified on denial of reh'g* (Aug. 20, 1993) ("The Legislature, however, did not intend that an employer be allowed to raise the exclusivity rule for the purpose of deflecting a claim of discriminatory practices."); *Nazir v. United Airlines, Inc.,* 178 Cal. App. 4th 243, 288 (2009) ("a claim for [IIED] arising out of employment is 'not barred where the distress is engendered by an employer's illegal discrimination practices.'") (citation omitted).

In *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 902 (2008), the California Supreme Court affirmed its holding in *Livitsanos* and related cases and held that the *Livitsanos* exceptions were not of any help to the plaintiffs in that whistleblower retaliation context. The Court held that the exception for conduct that "contravenes fundamental public policy" is aimed at "permitting a *Tameny* action to proceed despite the workers' compensation exclusive remedy rule." *Id*. at 902–03. As to the exception for conduct that "exceeds the risks inherent in the employment relationship," the Court held that "it might seem at first blush to apply here—based on the argument that whistleblower retaliation is not a risk inherent in the employment relationship—but we rejected this same argument [before]." *Id*. Following *Miklosy*, the California Courts of Appeal have attempted to define the type of intentional conduct that falls within an exception to the exclusivity provisions.

At least one recent decision held that *Miklosy* did not overturn the longstanding view that discriminatory conduct exceeds the bounds of a normal employment relationship and stretches beyond the WCA's preemption in the context of a claim under the Fair Employment and Housing Act. *See Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017) ("[A]bsent further guidance from our Supreme Court, we are unwilling to abandon the longstanding view that unlawful discrimination and retaliation in violation of FEHA falls outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on such discrimination and retaliation are not subject to workers' compensation exclusivity.") This Court has continued to hold that neither discrimination nor harassment is a normal incident of employment and thus is not within the exclusive remedy provisions of the WCA. *See, e.g., Arnaud v. Little Caesar Enterprises, Inc.*, No. EDCV1801316DOCKKX, 2018 WL 4772274, at *5 (C.D. Cal. Oct. 1, 2018).

Here, Plaintiff alleges that she received a call from Defendant Smith inquiring why Plaintiff was not at work. Compl. ¶ 12. Plaintiff explained that she was recently in a car accident and had been excused from work by her doctor. *Id.* Plaintiff further explained that she provided a copy of her doctor's note to her immediate supervisors and offered to provide a copy to Defendant Smith as well. *Id.* Defendant Smith responded by rejecting Plaintiff's offer and advising Plaintiff that her absences were not been approved. *Id.* ¶ 13. On the spot, Defendant Smith gave Plaintiff the option of resigning or being fired, effectively constructively terminating Plaintiffs employment. *Id.* The Court need not at this stage determine whether these allegations alone are sufficient to state a claim for discriminatory conduct that exceeds the bounds of a normal employment relationship and survives pre-emption by the WCA. *See Padilla v. AT &T Corp.*, 697 F.Supp.2d 1156, 1159 (C.D. Cal. 2009) ("Remand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'"). The alleged conduct, such as immediately rejecting Plaintiff's offer to provide a doctor's note and advising Plaintiff that her absences were not approved, may indeed exceed the bounds of a normal employment relationship based on disability discrimination. When viewed in conjunction with the other facts in the Complaint— including the allegation that Defendant Employers fired Plaintiff "because Plaintiff was physically disabled or perceived to be disabled"—there is a non-fanciful possibility that Plaintiff's claim is not pre-empted by the WCA. Compl. ¶ 14; *see Macey*, 220 F. Supp. 2d at 1117. Thus Defendants' argument that Defendant Smith was fraudulently joined fails on this basis.

## B.　　Whether Plaintiff Can Satisfy The Elements Of An IIED Claim

Next, the Court addresses whether Plaintiff sufficiently alleges a non-fanciful possibility that Defendant Smith's conduct was outrageous or caused intentional harm for the purposes of establishing a claim of IIED.

Defendants argue that Plaintiff has failed to sufficiently plead outrageous conduct. Opp'n at 6. Specifically, Defendants argue that the alleged facts relate exclusively to Smith's personnel management activity and do not reflect outrageous conduct, or intent to cause distress, and therefore are insufficient to form a basis for an IIED claim against Smith. *Id.* at 7. Plaintiff responds that she satisfies the elements of an IIED claim as Defendant Smith's disability discrimination amounts to extreme and outrageous conduct. Mot. at 9.

The elements of a claim for intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation marks omitted). "[C]onduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*. at 1050–51 (internal quotation marks omitted).

Plaintiff has sufficiently alleged a non-fanciful that Defendant Smith engaged in outrageous conduct. The decision in *Calero v Unisys Corp.,* 271 F. Supp. 2d 1172, 1178 (N.D. Cal. 2003) is instructive. There, the Court held that it was possible that plaintiff could be able to establish a cause of action for IIED where the defendant terminated the plaintiff even though he regularly kept the defendant informed as to his condition following a car accident and stated that he would bring in a doctor's note when he returned to work. *Id*. Although the plaintiff did not detail the egregiousness of the conduct of which he complained, he did allege that he notified the defendant of his injuries and that he would not be returning to work. *Id*. He then alleged that nonetheless the defendant sent plaintiff a letter terminating him for failure to notify of his absence. *Id*. Ultimately the District Court remanded as a state court could possibly find that plaintiff has established a cause of action for IIED. *Id*.

Here, Plaintiff bolsters allegations of disability discrimination with additional facts stating that she received authorization from her doctor to not report for work, that she immediately provided a copy of her doctor's note to immediate supervisors, and that she

offered to provide a copy to Defendant Smith who refused this offer and advised Plaintiff that her absences were not approved. Compl. ¶11–13. Defendant Smith thereafter gave Plaintiff the option of resigning or being fired. *Id.* ¶ 13. The Court finds that a state court could possibly find that Plaintiff has established a cause for IIED.

## IV. Costs and Fees

Following remand of a case upon unsuccessful removal, the district court may, in its discretion, award attorney's fees "incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court declines to award attorney's fees because Defendants' removal was objectively reasonable in part given the uncertainty following the holding in *Miklosy*.

## V. Disposition

For the reasons set forth above, the Court GRANTS Plaintiff's Motion to Remand and REMANDS this action to the Superior Court of the State of California, County of Orange.

The Clerk shall serve this minute order on the parties.